15

property restriction even though he asked to go more often. As a result, he was not able to prepare for trial and had to take a plea bargain for something he did not do when he had been planning on going to trial the whole time. ~~he asked~~ ~~been planning on going to trial the whole time~~ He repeatedly filed grievances and requests over not being given access to these materials with trial only days away and nothing was done. When commissary came on Wednesday, April 19, 2017, Janice, a Keefe contract worker in charge of commissary at WRJ, refused to give the Plaintiff his indigent pack (stamped envelopes, writing supplies and state deodorant) because Captain Aldridge said he could not have these things while on property restriction. These items were not placed in his property either. His lawyer did not accept collect calls and he was unable to communicate with his lawyer because he did not have any money on his phone and was not given his indigent stamped envelopes, paper and pen. Captain Aldridge also placed him on commissary restriction for life and told him he was never allowed to order commissary again while he was at WRJ. Plaintiff asked Administrator King and all other ranking members at WRJ to give him back the commissary they took from him and to let him have his

16

commissary privileges back. Eventually they were given back approximately September 2017 when his commissary was eventually returned. On April 18, 2017, at his disciplinary hearing he was placed on lockdown for the rule violation that placed him on property restriction. He was given 25 days lockdown, which revoked his gym and commissary privileges during this time, until May 13, 2017 and he was only to get rec and hygiene from 2300-0700 hours. On April 14, 2017, the Plaintiff did not receive his mat until 0030 hours. On April 17, 2017, the Plaintiff did not receive his mat until 0100 hours. On April 18, 2017, C.O. John Doe did not give him a mat until 0015 hours. On April 19, 2017, C.O. Blevins did not give him a mat until 0315 hours. On April 20, 2017, C.O. John Doe did not give him a mat until 0200. On April 22, 2017, C.O. John Doe did not give him a mat until 0130 hours. On April 23, 2017, C.O. John Doe did not give him his mat until 0300 hours. Plaintiff filed multiple grievances about not getting his mat on time at 2300 hours and the rover still taking it at 0700 hours. Plaintiff wrote he was on lockdown and came out for hygiene and rec during the 8 hours he was given to sleep on his mat. He asked for his mat during a

17

different time so that he could get 8 hours of possibly sleeping on his mat instead of only a few hours each night with the way things were going. No relief was given. Lieutenant Morrison responded that he would make sure the Plaintiff got his mat on time and that he would see about changing the times he got his mat while he was on lockdown. He did nothing and nothing changed. During Plaintiff's lockdown time he was also never offered outside rec during the time he was suppose to get it. During his property restriction time he was unable to wash his hands after using the bathroom and before he ate exposing him to possibly catching diseases. The officers were suppose to provide him with clean clothes, towel, wash cloth, soap and other hygiene items during his time out. He was never once given any of these items. His cell was searched every day when his mat was taken to make sure he did not have anything in it except a roll of toilet paper. On April 23, 2017, Lieutenant Hill partially took him off property restriction only returning legal material, writing supplies and Bible. Plaintiff was also given and allowed to keep his mat, bedding linens and state issued hygiene items in his cell again. During these 12 days the Plaintiff was unable to effectively

18

practice his religion. He suffered emotional duress because of this and other factors stemming from his property restriction. Plaintiff was denied religious materials to study, meditate over, use for comfort and to help find guidance in concerning his up-coming trial. He suffered pain in all of his body and froze all the time from having to lay and sleep on bare concrete most of the time. This violated his Due Process by punishing him before he was found guilty of the rule violation he was charged with while still a pretrial detainee. Plaintiff was denied proper hygiene by not being able to brush his teeth during these 12 days because he was not given hygiene items every night like he was suppose to get. These and other violations violated his Fourteenth Amendment by cruel and unusual punishment. Corporal Phillips wrote the Plaintiff up for the rule infraction and he was already going through the correct disciplinary process for the rule violation. Plaintiff received punishment according to the inmate handbook when he was found guilty at his hearing. All other punishment Captain Aldridge and other staff at WRJ violated multiple of his rights by taking all of his property three days after the incident and not punishing him as the inmate handbook dictated. Ranking staff at

19

WRJ conspired with each other and their C.O.'s in order to punish the Plaintiff and make sure he was not given his mat and hygiene items like he was suppose to get them. He was punished before being found guilty or being charged with a rule violation. ~~one other inmates~~ He was punished above and beyond what the inmate handbook allowed. He was denied Equal Protection as other inmates were given.   His First Amendment rights were violated in denying him his Bible and other religious material. He was denied access to the Courts by not allowing him unrestricted access to ~~his access to~~ his Motion of Discovery, his other legal material and writing supplies, right before his scheaduled trial date which forced him into a plea bargain. He was also denied his indigent pack which prevented him from writing his lawyer. It was a failure to protect when he was denied sanitary living conditions and exposing him to staph and other diseases. It was cruel and unusual punishment to not give him a mat for atleast 8 hours a day and to not give him an 8 hour period of uninterrupted sleep. This was improper punishment and given before he was found guilty or even charged with a rule violation. Nowhere in the inmate handbook does it allow for

20

inmates to be punished with loss of commisary
and secure pack privileges for life. Plaintiff was
placed on this restriction for life. It was not
until 5 months later in September 2017 that he
was able to get Administrator Wolfe to give him
these privileges back. Plaintiff wrote Executive
Director David Farmer appealing to him and the
Chief of Operations wrote back agreeing
with WRJ staff.

46. ~~Administrators~~ Upon information and belief
the Administrators conspired with ranking staff
all the way down to regular C.O.'s to violate
the Plaintiff's rights.

47. Defendant Morrison was a Lieutenant at WRJ
and at all times mentioned herein held the rank of
Lieutenant and was assigned to WRJ. He was
personally aware and responsible for placing
the Plaintiff, a pretrial detainee, on 2 Officer
Minimum, without the Plaintiff being found guilty
or ever charged with a rule infraction for the
incident in question, knowing the Plaintiff
would not be given proper hygiene and outside
rec opportunities.

48. Defendants John/Jane Doe were personally

21

aware and responsible for not giving the Plaintiff proper hygiene and outside rec opportunities while the Plaintiff was on 2 Officer Minimum in A pod.

49.    The Plaintiff was placed on 2 Officer Minimum by Lieutenant Morrison on January 21, 2017. From January 21, until February 8, 2017, the Plaintiff was on 2 Officer Minimum, which means the Plaintiff can not come out of his cell unless there are atleast 2 officers present and the Plaintiff is in full restraints. He was only given the opportunity to shower twice during these 17 days. The Plaintiff did not get his first shower until February 1, 2017, which was 10 days after being placed on 2 Officer Minimum. The Plaintiff's next shower was 6 days later. One shower in 16 days.

50.    On January 23, 2017, the Plaintiff was placed on lockdown for 27 days on an unrelated incident to why the was on 2 Officer Minimum. During this time his gym and commissary priveleges were revoked and he was only allowed out for hygiene and rec from 2300 - 0700 hours. He asked Officer Kernord for a shower on January 23, 2017, and he stated that Lieutenant Morrison said he was not to get a shower but every 72 hours.

22

Officers Thacker and Dorcy offer him a shower and a phone call on January 26, 2017, at 1240 hours. Plaintiff made a phone call first. Before he completed his call they told him that he had to lockdown for emergency count, and that they would come back to give him a shower. They never did. Plaintiff asked every officer for a shower and rec on evening and night shift that worked A pod while he was on 2-MAN. He did not receive his first shower until February 1, 2017, at approximately 0400 hours. This was his first shower in 10 days. He filed a grievance on January 26, 2017, to Administrator King for him not getting a shower after emergency count was over. He filed multiple grievances on paper and on the kiosk about not being able to get hygiene, rec or a legal call while on 2-MAN without any relief. On February 7, 2017, he had someone call the hotline, to report officers, about him not getting hygiene and rec. On February 8, 2017, he got his second shower at 1000 hours and was taken off 2-MAN that evening. A-pod tower officers John Doe and A-pod rover officers John Doe refused him hygiene from January 22, 2017, to February 8, 2017, except on February 1, and February 8. Plaintiff had only 1 shower in 16

23

days from January 21, 2017 until January 8,
2017, when he got his second shower, and later
taken off 2-MAN.

51.   Upon information and belief Lieutenant
Morrison put him on 2-MAN knowing he
would not get hygiene on a regular basis and
most likely not every 72 hours, in order to
punish him. He was not given Equal Protection
as other inmates. He was never written up for
the reason he was placed on 2-MAN. He was
punished without Due Process when Lieutenant
Morrison used 2-MAN as punishment instead
of using the disciplinary process described in
the inmate handbook. These methods and violations
constituted a Fourteenth Amendment violation
under cruel and unusual punishment. It also
violated him Eighth Amendment right since he was
a pretrial detainee during this time.

52.   Defendants Warden Michael K. Martin, Unit
Manager Cecil Pritt, Counselor Shiflett, Amanda
Wright, Steve Fincham, Keefe, Keefe contractors
John/Jane Does, and C.O.'s John Doe all contributed
to violating the Plaintiff's rights. They knowingly
and willingly violated his rights on several occassions
in 2018 while he was at Huttonsville Correctional Center.

24

53. From April 2017 to July 2017 the Plaintiff was placed in confinement on pre-detention ~~status~~ at Huttonsville Correctional Center multiple times. In the Detension Report it says the Plaintiff is only being detained to conduct an investigation and for the facility safety and security. When the Plaintiff came to confinement each time his commissary was thrown away and his hygiene was taken from him. Officers John Doe threw his commissary away each time and did not give the Plaintiff a chance to mail it home. The Plaintiff was not allowed to order commissary or have any personal hygiene ever though he was not charged with a rule infraction or found guilty of one. The Plaintiff wrote a grievance addressing this issue and was denied. Administration replied that all opened and unopened food items will either be destroyed or mailed home at the inmate's expense. Staff just throws away all food items without the opportunity being given to mail home. General Population, Administrative Segregation and Protective Custody inmates are allowed to possess and order food items on the segregation units. Inmate's property is stored in the segregation units. It is Huttonsville Correctional Center's policy to treat inmates as

if they have already been found guilty of a
rule violation, when it comes to hygiene, food
items, and personal property, upon being placed in
the segregation units. This violates the Plaintiff's
Due Process rights.

54.  The Plaintiff was housed at Huttonsville
Correctional Center from March 2018 through
July, 2018. During this time the Plaintiff was
over charged multiple times for stamps and stamped
envelopes from the H.C.C. Keefe Commissary.
They sold stamps for 50¢ and stamped envelopes
for 58¢. The Plaintiff bought a 1¢ blank envelope
and tried to write a voucher to the Post Office
and was denied. 3 Corrections Program Supervisor
put out a memorandum to all inmates dated
04 November 2016 saying H.C.C. Post Office
will no longer accept vouchers for outgoing one
(1) ounce mail. He said stamps and stamped
envelopes need to be purchased through the H.C.C.
Keefe Commissary. The Plaintiff filed a grievance
over having to pay inflated prices for stamps
and stamped envelopes. Corrections Facility
Coordinator I Amanda Wright responded on
13 June 2018 denying this grievance and refering
it to Steve Finchom's memorandum. There is no
other way to mail out mail at H.C.C. without paying

26

inflated prices on postage.

55.  The Plaintiff was housed in the segregation units, E1 and E2, between April 2017 and July 2017 at Huttonsville Correctional Center. He was not provided with a chair or stool to sit at the table mounted on the wall opposing the bunk. The Plaintiff had no where to sit to eat meals and write except for his toilet and bunk. Plaintiff could not reach his table while sitting on his bunk. In B1 and B2, General Population that is set up exactly as E1 and E2, inmates are provided with a chair in their cell. Plaintiff is being punished by not being provided with a chair. Plaintiff filed a grievance. Unit Manager Cecil Pritt denied this grievance.

56.  From April 2017 thru July 2017 the Plaintiff was punished with decreased air circulation while he was housed in H.C.C.'s segregation units, E1 and E2. General Population inmates housed on B1 and B2, which is set up exactly as E1 and E2, are provided with better air circulation. The windows on B1 and B2 are not welded shut like on E1 and E2. These were welded a couple years ago. B1 and B2 provides a fan in each cell. B1 and B2 does not

27

have metal welded to the bottom of the doors
which decreases air flow going under the door.
The ventilation system in E1 and E2 barely
pushes any air out the vents. Plaintiff filed a
grievance over these issues and Unit Manager
Cecil Pritt denied it.

57.   The Plaintiff was housed in the segregation
units multiple times between April 2017 and
July 2017 at H.C.C. While the Plaintiff was
merely being detained and not yet charged with
or found guilty of a rule violation, he was
denied permission by Counselor Shiflett to order
magazine and newspaper subscriptions. Inmates
are allowed to receive magazine and newspaper
subscriptions in the segregation units regardless
of their status. Plaintiff filed a grievance and
was told by ~~Counselor Shiflett~~ Unit Manager Cecil Pritt
that he was not allowed to order or ~~B~~renew
subscriptions while in Segregation. He quoted
Unit E1 Segregation Rules/Regulations on page #7,
2f: You are not allowed to order or renew
subscriptions while in Segregation. This covers
inmates on pre-detension because Plaintiff was
pre-detension at time he made the request.
This violates the Plaintiff's First Amendment
right.

28

58.    While the Plaintiff was housed in H.C.C.'s segregation units from April 2017 thrue July 2017 he was strip searched every time he was taken out of his cell and locked in the shower to shower and then strip searched again upon getting out of the shower. The Plaintiff was in visual contact the entire time ~~while after~~ Officers John Doe searched him and then re-strip searched him again. Unit Manager Cecil Pritt denied Plaintiff's grievance that he was being excessively strip searched.

59.    Every time the Plaintiff was placed into confinement at H.C.C., from April 2017 thrue July 2017, Officers John Doe took several items from him and placed them in his property without giving him a receipt. The Plaintiff had no idea what items were stored and what items were missing. The Plaintiff requested a copy of the receipt inventorying his property and was informed by Cecil Pritt that he had to fill out a voucher and pay for a receipt of the property that was taken from him. Plaintiff filed a grievance and was denied by Cecil Pritt.

V. LEGAL CLAIMS

29

60. Plaintiff realleges and incorporates by reference paragraphs 1-59.

61. Defendants Crawford, King, Wolfe and John/Jane Does violated Plaintiff Duncan's Eighth and Fourteenth Amendment rights by denying him adequate outside rec from August 26, 2015 thrue October 10, 2017. As a result of this the Plaintiff suffered injuries.

62. Defendants Wolfe, King, David Farmer, Chief of Operation John Doe, Captain Aldridge, Lieutenant Hill, Lieutenant Morrison, Corporal Phillips, Corporal York, C.O. Maynard, C.O. Adkins, C.O. Harvey, C.O. Hendricks, C.O. Blevins, Janice, Keefe and C.O.'s John/Jane Doe violated the Plaintiff's First, Eighth and Fourteenth Amendment rights by denying him his personal and/or state issued property while he was on property restriction from April 12, 2017 until September 2017 while he was at WRJ.

63. Defendants David Farmer, Chief of Operations, John Doe, Crawford, King, Wolfe, Aldridge, Hill, Morrison, Phillips, York, Maynard, Adkins, Harvey, Thacker, Dorcy, Keaton, Hendricks, Kernard, Blevins, Keefe, Janice and John/Jane Does all conspired together to violate Plaintiff

30

Duncan's rights while he was at WRJ. The supervising officers failed to properly supervise and train the officers working underneath them.

64.  Defendants King, Aldridge, Morrison, Hill and officers John/Jane Doe are responsible for denying the Plaintiff Duncan's Eighth and Fourteenth Amendment rights while he was placed on 2-MAN from January 23, 2017 thrue February 8, 2017.

65.  Defendants Martin, Pritt, Shiflett, Wright Fincham, Keefe, Keefe contractors John/Jane Doe's, and C.O.'s John/Jane Does all contributed to violating the Plaintiff's constitutional rights by contributing to violate Plaintiff Duncan's Due Process right to not be treated guilty until found guilty by denying him his property or to order commissary until he was found guilty of a rule violation, over-charging for postage, not providing him a chair/stool in his cell, denying him proper air circulation, excessively strip searching him, not giving him a receipt for his property/ and denying him from ordering magazine and newspaper subscriptions.

66.  Defendant D.O.C. Commissioner Jividen violated Plaintiff Duncan's rights by not giving him

31

relief and affirming the denial of all his grievances
filed concerning Hattonsville Correctional Center from
2018.

67. Plaintiff Duncan has no plan, adequate
or complete remedy at law to redress the
wrongs described herein. Plaintiff Duncan has
been and will continue to be irreparably
injured by the conduct of the defendants
unless this court grants declaratory and injunctive
relief which plaintiff seeks.

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiff Duncan respectfully
prays that this court enter judgment:

68. Granting Plaintiff Duncan a declaration
that the acts and omissions described herein
violate his rights under the Constitution and
laws of the United States, and

69. A preliminary and permanent injunction
ordering defendants Commissioner Jividen, Warden
Martin, Shiflett, Wright, Fincham, Cecil Pritt, Keefe,
John/Jane Does Keefe Contract Workers and C.O.'s
John/Jane Doe to cease violating the

32

rights of Plaintiff Duncan, and

70. Granting Plaintiff Duncan compensatory damages in the amount of $15,000 against each defendant jointly and severally.

71. Plaintiff Duncan seeks punitive damages in the amount of $50,000. Plaintiff Duncan seeks these damages against each defendant, jointly and severally.

72. Plaintiff also seeks a jury trial on all issues triable by jury.

73. Plaintiff also seeks recovery of his costs in this suit, and

74. Any additional relief this court deems just, proper, and equitable.

Dated: October 9, 2018

Respectfully Submitted,
Henry Duncan #3556953
Northern Correctional Facility,
112 NRC Drive
Moundsville, WV 26041

33

# VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Moundsville, WV on October 10, 2018

*Henry Timberlake Duncan*

Henry Timberlake Duncan

Henry Duncan 3556953
Northern Correctional Facility
112 NRC Drive
Moundsville WV 26041

Clerk, United States District Court
845 Fifth Avenue, Room 101
Huntington WV 25701

Henry Duncan 3556953
Northern Correctional Facility
112 NRC Drive
Moundsville WV 26041

Clerk, United States District Court
845 Fifth Avenue, Room 101
Huntington WV 25701

2 of 2

US POSTAGE >> PITNEY BOWES
ZIP 26041
02 1W
0001402113 OCT 10 2018
$ 001.10°

US POSTAGE >> PITNEY BOWES
ZIP 26041
02 1W
0001402113 OCT 10 2018
$ 000.89°