IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HENRY TIMBERLAKE DUNCAN,

        Plaintiff,

v.                                                          CIVIL ACTION NO. 3:18-01355

EXECUTIVE DIRECTOR DAVID FARMER,
et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are three sets of objections to the Proposed Findings and Recommendation ("PF&R") issued by Magistrate Judge Cheryl A. Eifert on May 18, 2020. Plaintiff Henry Timberlake Duncan timely filed his Objections on June 4, 2020. *Pl.'s Objections*, ECF No. 247. Without offering any explanation, Defendants Keaton and Mannon filed Objections well after the time to do so expired. *Keaton Objections*, ECF No. 250; *Mannon Objections*, ECF No. 251. For the reasons set forth below, the Court **DENIES** Defendant Keaton's Objections, **DENIES** Defendant Mannon's Objections, and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Objections. The Court accordingly **VACATES** the PF&R's findings with respect to Plaintiff's claims against the unknown corrections officer referenced in Plaintiff's Objections and those based on a theory of supervisory liability, but **ADOPTS AND INCORPORATES HEREIN** the remainder of the PF&R. *PF&R*, ECF No. 245. The Court further **GRANTS** the Motion to Dismiss filed by Defendants Keefe Commissary Network, LLC, and Janice Dennison, *Keefe Mot. to Dismiss*, ECF No 146, **GRANTS** the Motion to Dismiss filed by Defendant Rachel Adkins, *Adkins Mot. to Dismiss*, ECF No. 236, and **DISMISSES** the Second Amended Complaint

as raised against them. Finally, the Court **DENIES IN PART** the remaining Motions to Dismiss with respect to the issues of exercise, administrative segregation, excessive force, failure to protect, and supervisory liability, but **GRANTS IN PART** the remaining Motions to Dismiss with respect to all other claims. *Mots. to Dismiss*, ECF Nos. 132, 135, 137, 141, 143, 159, 166, 168, 170, 172, 175, 180, 182, 184, 197, 199, 201, 205, 214, 216, 219, 228, 230.

## I. BACKGROUND

While Magistrate Judge Eifert's PF&R discusses the factual basis of this case in greater detail, a limited summary of Plaintiff's Second Amended Complaint and attendant proceedings is worthwhile here. Proceeding *pro se*, Plaintiff initiated this civil rights action on October 9, 2018, and alleged a variety of constitutional claims stemming from his incarceration at the Western Regional Jail in Barboursville, West Virginia and the Huttonsville Correctional Center in Huttonsville, West Virginia. *Compl.*, ECF No. 2, at ¶¶ 34–59. Over the following months, Plaintiff amended his original Complaint twice to add new claims and narrow this action to those claims related to his incarceration in the Western Regional Jail. *See Second Am. Compl.*, ECF No. 90, at ¶¶ 21–137. These claims often overlap, implicating similar constitutional provisions and precedent. For the purposes of resolving Plaintiff's Objections, only four categories of claims are relevant: those alleging unconstitutional restrictions on his access to hygiene products, those alleging violation of the Equal Protection Clause based on his access to the jail's commissary, those alleging that staff members failed to protect him, and those alleging supervisory liability.

With respect to the first category of claims—those related to hygiene—Plaintiff recounts being able to shower only once over the course of a seventeen-day period of heightened supervision by two officers. *Id.* at ¶ 34. Specifically, he claims that jail staff did not allow him to shower during the ten-day period between January 21, 2017 and February 1, 2017, and then again

between February 1, 2017 and February 8, 2017. *Id.* He also alleges that he was not permitted to keep soap in his cell, and that he was denied access to clean clothes, a towel, deodorant, and supplies to brush his teeth. *Id.* at ¶¶ 50, 55, 75, 86. He claims these restrictions caused him to develop "rashes on his skin causing pain, chafing, scratching, and irritation," and that his "health was put at risk [by] exposing him to diseases." *Id.* at ¶ 86.

Plaintiff also alleges that his commissary privileges were revoked for a period of twenty-seven days in January 2017 because of an "unrelated incident." *Id.* at ¶ 34. Several months later, Plaintiff alleges that he was placed "on commissary restriction for life," and that a staff member "told him he was never allowed to order commissary again while he was at" the Western Regional Jail. *Id.* at ¶ 57. This lifetime ban seems to have come to an end in September 2017, when Plaintiff "was able to convince the new Administrator . . . to restore his commissary privileges." *Id.* at ¶ 85.

Plaintiff's failure to protect allegations stem from an incident on July 21, 2017, wherein eight inmates attacked him from behind while he was watching television. *Id.* at ¶ 87. Plaintiff claims that a corrections officer—identified in the Second Amended Complaint as Melissa Mannon—permitted the attackers to "cap" their cell doors to enable them to leave their cells and assault him. *Id.* He claims he was extensively beaten, and that Mannon ignored his calls for help when he attempted to escape to the safety of his cell. *Id.* at ¶¶ 89–90. Plaintiff notes that the leader of his attackers, Dustin Saul, was well-known for violence within the Western Regional Jail and that jail staff still made no effort to protect him. *Id.* at ¶ 104.

The final set of allegations at issue here are those concerning supervisory liability. The factual basis for this claim is somewhat ambiguous, and the only mention of a supervisory liability claim simply concludes that a number of the named defendants "failed to hire, train[,] and/or

supervise their subordinates at the [Western Regional Jail] while the Plaintiff was housed there." *Id.* at ¶ 133. Liberally construed, Plaintiff appears to allege that all (or at least many) of his injuries resulted from a failure to supervise jail employees.

Defendants filed a total of twenty-five motions to dismiss this action, generally alleging that Plaintiff had failed to state a claim under 42 U.S.C. § 1983 and that qualified immunity shielded them from any liability. Three defendants advanced slightly more particularized arguments. First, Defendants Keefe Commissary Network, LLC and Janice Dennison argued that Keefe (as a private entity) and Dennison (as an employee of a private entity) are not subject to liability under § 1983. *Keefe Mot. to Dismiss*, at 5. Second, Defendant Rachel Adkins moved to dismiss by noting that she is not mentioned in the Second Amended Complaint at all. *Adkins Mem. of Law*, ECF No. 237, at 6. Magistrate Judge Eifert reviewed the motions, and issued her PF&R on May 18, 2020. She recommended granting the motions filed by Keefe, Dennison, and Adkins in their entirety, and against all defendants with respect to claims other than those regarding "exercise, administrative segregation, excessive force, and failure to protect." *PF&R*, at 1–2. Plaintiff timely filed his Objections, arguing that the Court should reverse Magistrate Judge Eifert's findings with respect to his claims relating to hygiene, commissary access, failure to protect, and supervisory liability. Eight days after they were due, Defendants Keaton and Mannon filed their own Objections. Before turning to the substance of all three sets of objections, the Court will briefly outline the legal considerations that will govern its analysis.

## II. STANDARD OF REVIEW

District courts are charged with making "a *de novo* determination upon the record . . . of any portion of [a] magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1)(C). The logical corollary of this

requirement is that courts need not review those portions of a magistrate judge's findings to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). Nor are courts tasked with conducting *de novo* review of "general and conclusory objections" that fail to direct them to specific errors in a magistrate judge's findings and recommendations. *Orpiano v. Johnson*, 687 F.2d 44, 47–48 (4th Cir. 1982); *see also United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."). Nevertheless, courts maintain the wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1)(C).

As a separate matter, any "document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Yet "[t]he 'special judicial solicitude' with which a district court should view such *pro se* [filings] does not transform the court into an advocate," *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (emphasis added), and the Court will not construct Plaintiff's legal arguments for him. With all this in mind, the Court turns to a review of the pending Objections.

### III. DISCUSSION

#### A. Plaintiff's Objections

As noted above, Plaintiff structures his Objections around four basic points: that Magistrate Judge Eifert erred in recommending dismissal of his allegations of inadequate hygiene products, his allegations of unlawful restrictions on his commissary access, his allegations that officers failed to protect him, and his allegations predicated upon a theory of supervisory liability. The Court will consider each argument in turn.

### 1. Hygiene Products

Plaintiff's first particularized objection is that Magistrate Judge Eifert erred in finding that he had not stated a claim for inadequate access to hygiene supplies and resources. *Pl.'s Objections*, at 1–2. Specifically, he contends that it "was obvious without needing to be stated that the Plaintiff would suffer burning and irritation to his body if not allowed to shower and change clothes" after being covered in pepper spray on one occasion. *Id.* at 2. This argument stems from Magistrate Judge Eifert's conclusion that stating pepper spray "got all over his body" was not enough to allege any injury or any disregard to inmate health or safety by a particular officer. *See PF&R*, at 36.

Magistrate Judge Eifert is correct. Though the court liberally construes the Second Amended Complaint, noting that pepper spray "got all over his body" does not obviously give rise to an inference that Plaintiff sustained any particular injury caused by his inability to shower. Absent any allegation that his lack of a shower caused an injury, Plaintiff cannot state a claim under the Eighth or Fourteenth Amendments. *See Odom v. S.C. Dept. of Corr.*, 349 F.3d 765, 770 (4th Cir. 2004) (addressing the Eighth Amendment and noting that "a prisoner must allege a serious or significant physical or emotional injury" to demonstrate an "extreme deprivation"); *Westmoreland v. Brown*, 883 F. Supp. 67, 76 (E.D. Va. 1995) (addressing the Fourteenth Amendment and noting that "a particular condition constitutes punishment only where it *causes* physical or mental injury" (emphasis in original)). Plaintiff's objection is without merit and is accordingly denied.

### 2. Property and Commissary Restrictions

Plaintiff's next objection relates to the PF&R's treatment of his claims grounded in the Equal Protection Clause of the Fourteenth Amendment—namely, those stemming from property and commissary restrictions implemented during periods of heightened supervision. *See Pl.'s*

*Objections*, at 2–3. Magistrate Judge Eifert reasoned that Plaintiff's "conclusory allegation that his punishment regarding property and commissary restrictions was more severe than other inmates who committed similar infractions does not pass muster," as he failed to "identify any similarly situated inmates or provide any specific facts that he was treated differently, and that the unequal treatment was intentional or purposeful." *PF&R*, at 38. Plaintiff disagrees. He argues that he knows "of other inmates who were similarly situated" and who "were treated differently [than] him," and "that this treatment was intentional and purposeful." *Pl.'s Objections*, at 2–3.

The Court's analysis on this point is straightforward. Plaintiff does not include any specific information in his Objections about who these similarly situated inmates are or how they were treated differently. Nor does he propose to amend his complaint to include this information; rather, he simply believes that it is premature to dismiss his equal protection argument at this stage of litigation. *Id.* at 3. Yet these are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are ripe for resolution at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If Plaintiff is aware of similarly situated inmates who have purposefully and intentionally been treated differently than him, he should include that information in his pleadings. Otherwise, dismissal is proper and his objection is denied.

### 3. Failure to Protect

Plaintiff's next objection is narrowly tailored to his claims against the unnamed corrections officer who performed the security check of cell doors before his July 21, 2017 assault. *See Second Am. Compl.*, at ¶ 115. He specifically argues that Magistrate Judge Eifert erred in finding "that C.O. John Doe was not deliberately indifferent to the plaintiff's safety and [did not have] a sufficiently culpable state of mind." *Pl.'s Objections*, at 3. Magistrate Judge Eifert reasoned that, at

most, Plaintiff had asserted that the unnamed officer had acted negligently "in allowing the push broom to remain in the unit and not performing a security check." *PF&R*, at 47. The Court agrees with half of this finding; Plaintiff presents no allegations that could support a finding that any defendants knew or should have known that the presence of a broom would carry a risk of harm. *See Bradshaw v. Harden*, No. 7:10CV00225, 2010 WL 2754319, at *3 (W.D. Va. July 12, 2010), *aff'd*, 401 F. App'x 805 (4th Cir. 2010). Yet Plaintiff is correct that he has sufficiently pleaded a set of facts that could support a claim against an officer who failed to perform a security check.

As an initial matter, it is worth noting that prison officials can be liable under § 1983 for failure to protect inmates against violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."). Yet to actually state an Eighth Amendment claim against the unnamed officer, Plaintiff must make two showings: (1) that the officer "acted with a sufficiently culpable state of mind (subjective component)" and (2) that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). To satisfy the subjective component, Plaintiff must allege that the officer was deliberately indifferent to his health or safety. *Farmer*, 511 U.S. at 834. Where an official "knows of and disregards an excessive risk to inmate health or safety," he or she may be found to have acted with deliberate indifference. *Id.* at 837. Here, Plaintiff has squarely alleged that officials at the Western Regional Jail know of (and tolerate) prisoners "capping" their cell doors to escape and assault other prisoners. *See Second Am. Compl.*, at ¶¶ 112–114. He also claims that the jail staff was on notice that a fellow inmate, Dustin Saul, was particularly violent and prone to capping his door and assaulting other inmates. *Id.* at ¶ 112. These allegations are sufficient to demonstrate deliberate indifference on the part of the

unnamed officer responsible for conducting security checks, and is therefore sufficient to satisfy the subjective component of an Eighth Amendment claim.

With respect to the objective component, a prisoner must demonstrate an extreme deprivation of a basic human need to state a claim under the Eighth Amendment in this context. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotations marks omitted). Plaintiff has done so here. He claims that the unnamed corrections officer failed to do a check of other cell doors, and that as a result eight inmates were able to extensively and severely beat him with a broom. *Second Am. Compl.*, at ¶¶ 87–91. He alleges he "suffered several wounds" from the beating, and that he "still has on-going [sic] pain in his wrist from blocking the push-broom bottom." *Id.* at ¶ 121. While Plaintiff will need to support his allegations with evidence at future stages of this litigation, the Court agrees with his objection and vacates Magistrate Judge Eifert's conclusion that he has not stated a claim against the unknown corrections officer responsible for conducting a security check of his pod.

### 4. Supervisory Liability

Plaintiff's final objection concerns Magistrate Judge Eifert's conclusion with respect to his claim for supervisory liability. *Pl.'s Objections*, at 4. In the PF&R, Magistrate Judge Eifert recommends dismissing Plaintiff's supervisory liability claims because he "has pointed to no action or inaction on the part of the defendants that resulted in a constitutional injury." *PF&R*, at 61 (internal quotation marks and citation omitted). Plaintiff takes issue with this reasoning, arguing that "[t]he Defendants promoted an unsafe environment at [the Western Regional Jail] by

allowing inmates to cap their cell door[s] without punishing them and allowing other unsafe behaviors." *Second Am. Compl.*, at ¶ 114. For similar reasons as above, the Court agrees with Plaintiff.

It is a matter of well-settled law that the doctrine of respondeat superior does not apply in suits brought pursuant to § 1983. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Instead, supervisory liability "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under § 1983, a plaintiff must allege

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Plaintiff has met his burden in *alleging* all three elements. First, he claims that jail staff and supervisors recognized, condoned, and promoted a widespread practice of inmates "capping" their cell doors, which permitted them to assault other inmates. *Second Am. Compl.*, at ¶ 114. Second, he contends that jail "[s]taff and administration knew of this and did not do anything to change it." *Id.* at ¶ 113. Finally, he alleges that his beating was only possible because of the Western Regional Jail's regular practice of allowing inmates to "cap" their cell doors in order to assault other prisoners. It bears noting that Plaintiff will need to substantiate these allegations at future stages of this litigation, but a motion to dismiss is simply not the correct procedural vehicle

to consider the veracity of his claims. The Court therefore credits his objection, agrees he has stated a claim for supervisory liability, and vacates Magistrate Judge Eifert's conclusions to the contrary.

### B. Defendants' Objections

As an initial matter, the Court notes that Magistrate Judge Eifert entered her PF&R on May 18, 2020, and objections were due on June 1, 2020, if filed electronically or on June 4, 2020, if filed by mail. *See PF&R*, at 63. Defendants filed their Objections over a week later, with no explanation for the delay. In recognition of the ongoing COVID-19 pandemic, however, the Court will nevertheless address Defendants' two Objections. The first of these is raised by both Defendants, and concerns Magistrate Judge Eifert's conclusion that Plaintiff's claims are not time-barred. Second, Defendant Mannon argues that Magistrate Judge Eifert erred in concluding that summary judgment in her favor would be premature at this stage of litigation. As is explained below, both contentions are meritless.

#### 1. Statute of Limitations

Both Defendants argue that Magistrate Judge Eifert erroneously concluded that Plaintiff's claims were filed within the applicable statute of limitations. *Keaton Objections*, at 4; *Mannon Objections*, at 5. There no shortage of irony in this argument—which is laid out in two overdue Objections—but it is deserving of scrutiny nonetheless. The defendants point out that the contested claims were first raised in a Motion to Amend filed on August 5, 2019, or about two weeks after the two-year statute of limitations expired. *Id.* Magistrate Judge Eifert determined that this did not preclude Plaintiff's claims, as "the statute of limitations is tolled while a prisoner is exhausting his available administrative remedies." *Battle v. Ledford*, 912 F.3d 708, 720 (4th Cir. 2019). She noted that Plaintiff filed a grievance on July 22, 2017, or one day after the attack that is

-11-

central to his claims. No response to the grievance was received until September 20, 2017, leading Magistrate Judge Eifert to reason that the nearly two months that had elapsed in the meantime did not count against Plaintiff.

Magistrate Judge Eifert is correct. Plaintiff's Second Amended Complaint was docketed on August 16, 2019, or well before the time bar imposed by the statute of limitations on § 1983 claims. Defendants' conclusory arguments to the contrary are unavailing. They appear to contend that Plaintiff's decision to file "only" one grievance somehow demonstrates that he was not diligent in pursuit of his rights. If Defendants have a proposal for a certain number of grievances that would be sufficient to demonstrate diligence, they are welcome to suggest one. But any such number would not be grounded in any statute, case law, or principle of equity. *See Holland v. Florida*, 560 U.S. 631, 653 (2010) (noting that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence" (internal citation and quotation marks omitted)). Their objections are accordingly denied.

### 2. Summary Judgment

Defendant Mannon raises one additional objection: that Magistrate Judge Eifert erred in determining that summary judgment would be premature at this point. *Mannon Objections*, at 8. The PF&R specifically notes that—although "Mannon has offered almost incontrovertible proof that she was not working at the time of the alleged attack on" Plaintiff—summary judgment would be premature given the breadth of Plaintiff's allegations. As above, Magistrate Judge Eifert is once again correct. Even if Defendant Mannon were not present during Plaintiff's attack, that fact alone is insufficient to prove definitively that she did not allow "the 8 inmates to cap their cell doors" as alleged in the Second Amended Complaint. *Second Am. Compl.*, at ¶ 120. While the Court is not

blind to the Plaintiff's burden moving forward, his allegations at this point are enough to avoid outright dismissal. Defendant Mannon's objection is therefore denied.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Keaton's Objections, ECF No. 250, and **DENIES** Defendant Mannon's Objections, ECF No. 251. The Court further **DENIES IN PART** and Plaintiff's Objections, ECF No. 247, with respect to his claims for hygiene restrictions and commissary access, but **GRANTS IN PART** his Objections with respect to his failure to protect and supervisory liability claims. The Court accordingly **VACATES** the PF&R, ECF No. 245, with respect to Plaintiff's claims against the unknown corrections officer and those based on supervisory liability, but **ADOPTS AND INCORPORATES HEREIN** its remainder. It follows that the Court **GRANTS** the Motion to Dismiss filed by Defendants Keefe Commissary Network, LLC, and Janice Dennison, ECF No 146, **GRANTS** the Motion to Dismiss filed by Defendant Rachel Adkins, ECF No. 236, and **DISMISSES** the Second Amended Complaint as raised against them. The Court further **DENIES IN PART** the remaining Motions to Dismiss with respect to the issues of exercise, administrative segregation, excessive force, failure to protect, and supervisory liability, ECF Nos. 132, 135, 137, 141, 143, 159, 166, 168, 170, 172, 175, 180, 182, 184, 197, 199, 201, 205, 214, 216, 219, 228, 230, but **GRANTS IN PART** the same motions with respect to Plaintiff's other claims.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to Magistrate Judge Eifert, counsel of record, and any unrepresented parties.

ENTER:  June 16, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE